1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| BOBBY HARRIS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>NISSAN NORTH AMERICA, INC, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. <br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.*<br><br>**(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE, SECTION 1770,** *et seq.*<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bobby Harris ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Nissan North America, Inc. ("Defendant" or "Nissan"), upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record, and alleges as follows:

**INTRODUCTION**

1.      This class action arises out of Nissan's failure to accurately and comprehensively identify the vehicle parts that should properly be classified as emissions warranty parts and high-cost emissions warranty parts under California's emission control system warranty requirements and covered under the emissions warranty for 7-years and 70,000 miles.

2.      Instead, in order to minimize Nissan's warranty exposure, Nissan has unilaterally limited the parts that should be covered under the emissions warranty, and has limited the parts that are designated as high-cost emissions warranty parts, covered for 7-years and 70,000 miles, including the parts specifically identified by Plaintiff.

3.      By not comprehensively identifying the parts that should be included as emissions warranty parts and high-cost warranty parts, Nissan is able to limit the warranty coverage for those parts.

4.      The fuel pump installed in the Class Vehicles is an emissions part and a high-cost warranty part, as demonstrated below. Nissan has wrongfully failed to identify the fuel pump installed in the Class Vehicles as an emissions part and as a high-cost emissions part.

5.      By this action, Plaintiff seeks reimbursement for, *inter alia*, all out of pocket costs paid for repairs that should have been covered under the 7-year 70,000-mile and California emissions warranty for the fuel pump, and an injunction to compel Nissan to properly identify the fuel pump as both an emissions warranty part and a high-priced warranty part.

**BACKGROUND**

6.      For decades, Nissan has been in the business of importing and distributing Nissan vehicles in the State of California, with the intent to sell Nissan vehicles to consumers in California. As such, the Nissan vehicles have been subject to state and federal regulations

1   regarding both emissions standards and regarding Nissan's obligation to provide consumers

2   with warranties relating to emissions parts.

3         7.      Specifically, dating back over 20 years, California Code of Regulations, Title 13,

4   Section 2035, *et seq*., entitled "Emission Control System Warranty Requirements for 1990 and

5   Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines

6   ("the CCR") has required Nissan to identify to the California Air Resources Board ("CARB")

7   all vehicle parts that are "high-priced" "warranted parts," and has required Nissan to provide a

8   7-year 70,000-mile warranty to California consumers relating to all "high-priced" "warranted

9   parts."  This provision is sometimes referred to as the "High-Cost Emissions-Related Parts

10  Warranty" or the "California Emission Control System Warranty."

11        8.      The CCR very clearly defines the methodology that Nissan is required to use in

12  order to identify which parts should be covered as emissions parts, and which parts should be

13  covered by the 7-year 70,000-mile warranty.

14        9.      Pursuant CCR Section 2035, with regard to 1990 and subsequent model year

15  vehicles, a "warranted part" is defined as, "any part installed on a motor vehicle or motor

16  vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which

17  affects any regulated emission from a motor vehicle or engine which is subject to California

18  emission standards."

19        10.      Furthermore, CCR Section 2037(b) states: "The manufacturer of each motor

20  vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent

21  purchaser that the vehicle or engine is:

22        (1)      Designed, built, and equipped so as to conform with all applicable regulations

23              adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2,

24              part 5, division 26 of the Health and Safety Code; and

25        (2)      Free from defects in materials and workmanship which cause the failure of a

26              warranted part to be identical in all material respects to the part as described in

27              the vehicle or engine manufacturer's application for certification, including any

28              defect in materials or workmanship which would cause the vehicle's on-board

1    diagnostic malfunction indicator light to illuminate, for a period of three years or

2    50,000 miles, whichever first occurs; and

3    (3)    Free from defects in materials and workmanship which cause the failure of a

4    warranted part described in section (c) below for seven years or 70,000 miles,

5    whichever first occurs."

6    11.    California Code of Regulations Section 2037(c) deals with "high-priced

7    warranted parts" under the California Emission Control System Warranty and states:

8    (1)    Each manufacturer shall identify in its application for certification the "high-

9    priced" warranted parts which are:

10    (a)    For 1990 through 2007 model year vehicles: [i] included on the Board's

11    "Emissions Warranty Parts List" as last amended February 22, 1985,

12    incorporated herein by reference, and; [ii] have an individual replacement

13    cost at the time of certification exceeding the cost limit defined in section

14    (c)(3);

15    (b)    For 2008 and subsequent model year vehicles: [i] subject to coverage as a

16    warranted part in section (b)(2) above, and; [ii] have an individual

17    replacement cost at the time of certification exceeding the cost limit

18    defined in section (c)(3).

19    (2)    The replacement cost shall be the retail cost to a vehicle owner and include the

20    cost of the part, labor, and standard diagnosis. The costs shall be those of the

21    highest-cost metropolitan area of California.

22    (3)    The cost limit shall be calculated using the following equation:

23    Cost limit {n)} = $300 x (CPI{n-2}]/ 118.3

24    Cost limit {n} is the cost limit for the applicable model year of the vehicle

25    rounded to the nearest ten dollars.

26    12.    In summary, any part that either effects a vehicle's emissions, or causes a

27    vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of

28

determining coverage under the CCR, considered a "warranted part." If a part is a "warranted part," the part shall have a 3-year 50,000-mile warranty.

13.     However,  if the part is a "high-priced" warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year 70,000-mile emissions warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

### NISSAN'S CONDUCT

14.     At all times herein relevant, for each new motor vehicle intended to be distributed by Nissan in the State of California, at the time of distribution, Nissan has purported to accurately notify CARB of the parts which should be covered as emissions related parts, also known as warranted parts. Furthermore, at all times herein relevant, for each new motor vehicle intended to be distributed by Nissan in the State of California, at the time of distribution, Nissan has purported to accurately notify CARB of the parts which should be covered under the 7-year 70,000-mile California emissions warranty.

15.     At all times herein relevant, for each new vehicle intended to be distributed by Nissan in the State of California, at the time of distribution, Nissan has purported to provide accurate written warranty documents with the vehicle, which purport to accurately identify all of the vehicle parts that are covered under the 3-year 50,000- mile California emissions warranty, as well as the 7-year 70,000-mile California emissions warranty.

16.     Nissan has engaged in a systematic business practice of omitting from the Nissan warranty booklet provided to owners and lessees at the time of sale or lease, and in resources provided by Nissan to its dealerships both at the time of sale or lease and afterwards, all of the parts that should be identified as emissions related warranty parts covered under the 3-year 50,000-mile warranty, and all of the "high-priced" warranted parts that should be covered under the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.  Nissan classifies *some* of the parts as being covered by the 3-year 50,000-mile California emissions warranty, and *some* of the "high-priced" warranted parts as being parts covered under the 7-year 70,000-mile California emissions warranty, but not all of the parts that should be covered either

by the 3-year 50,000-mile California emissions warranty, or the 7-year 70,000-mile California emissions warranty.

17.    Thereafter, when Nissan vehicles are presented by consumers to Nissan authorized repair facilities for repair, Nissan fails to provide coverage under the 3-year 50,000-mile California emissions warranty or the 7-year 70,000-mile California emissions warranty for all of the repairs that should be covered under said emissions warranties.

18.    As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by Nissan.

19.    Nissan engages in the alleged misconduct in order to reduce the amount of money that Nissan has to pay out on warranty-related repairs and warranty claims.

20.    If Nissan properly identified all of the warranted parts and high-priced warranted parts that should be correctly identified as such, then Nissan dealerships would properly provide coverage for said emissions related parts and high-priced parts under warranty.

21.    The failure by Nissan to properly identify parts as warranted parts and "high-priced" warranted parts under the CCR violates California Business and Professions Code section 17200, *et seq*. (the "UCL"), and the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq*. (the "CLRA"), and is intended to minimize the amount of money that Nissan has to pay out in warranty claims.

22.    Plaintiff and other consumers have suffered damage and lost money or property as a result of Nissan's wrongful conduct.

23.    Plaintiff's theory does not depend on the premise that CARB was deceived by the information that Nissan submitted, and Plaintiff is not accusing CARB of mismanagement or blaming CARB for Nissan's inaccuracy.  Nissan alone is responsible for selecting and identifying to CARB the parts that Nissan has unilaterally identified as warranted parts and "high-cost emissions warranty parts" as part of its application for vehicle certification.  That list may be correct as far as it goes or as far as CARB may know.  But, as Plaintiff alleges, the list is incomplete, as evidenced by Plaintiff's own experience.

**JURISDICTION AND VENUE**

24.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different from that of Defendant Nissan; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) Nissan is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100..

25.     This Court has personal jurisdiction over Nissan because Nissan has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

26.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Nissan transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Venue is also proper in this judicial district because a substantial portion of the transactions and occurrences that form the basis of Plaintiff's action occurred in this county.

**PARTIES**

27.     Plaintiff Bobby Harris ("Harris") is, and at all times relevant hereto has been, a resident and citizen of the State of California, County of Los Angeles.

28.     Nissan was and is, upon information and belief, a California corporation, headquartered in Franklin, Tennessee, doing business in California.

29.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

30.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of Nissan at all relevant times.

31.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary.  Each reference in this Complaint to "Nissan" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

32.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**PLAINTIFF'S FACTS**

33.     On May 23, 2017, Plaintiff purchased a used 2013 Nissan Juke, VIN JN8AF5MR4DT224342 (the "Harris Vehicle") from CarMax Auto Superstores California, LLC, located in Torrance, California.

34.     At the time that Plaintiff purchased the Harris Vehicle, the Harris Vehicle had in place the remainder of its new car warranty, including coverage pursuant to the California emissions warranty.

35.     On August 17, 2018 at 68,664 miles, Harris took the Harris Vehicle to Puente Hills Nissan ("Puente Hills"), because the check engine soon light came on. Puente Hills is a Nissan factory authorized repair facility and is one of the locations that Nissan consumers are supposed to take their vehicles in order for the vehicles to undergo repairs covered by the Nissan warranty. Puente Hills performed an emissions system testing service. Puente Hills found fault code P0087, low fuel pressure. Puente Hills determined that the fuel pump had an internal defect, causing the fault. As a result, Puente Hills replaced the fuel pump. The fuel pump that was replaced, and the fuel pump which is referenced in this complaint is the in tank fuel pump, part # 17040-1KM0B, and any predecessor part which was subsequently revised by Nissan. Nissan did not provide warranty coverage for the fuel pump under the California

emissions warranty. The cost of the repair was $851.45, plus tax, some of which Plaintiff paid out-of-pocket.

36.     The cost associated with the diagnosis and repairs relating to the fuel pump should have been covered and paid for by Nissan under the 7-year 70,000-mile California emissions warranty. This is because, pursuant to California Code of Regulations section 2037(c), the fuel pump should have been identified as a high-priced emissions part, and the parts relating to that repair should have been covered under section 2037(c).

37.     On February 13, 2020, counsel for Harris wrote Nissan relating to Nissan's failure to cover the fuel pump as a high-priced emissions part. In a letter dated March 24, 2020, Faegre and Drinker, Nissan's counsel, responded that Nissan did not provide coverage because Nissan does not consider a fuel pump to be an emissions related part. Nissan has taken the position that there is no coverage for the Class Vehicles' fuel pump under the California emissions warranty.

38.     Plaintiff contends that the fuel pump in Class Vehicles is a part covered by the California emissions warranty, because a defect in the fuel pump will cause the Class Vehicles to fail a smog check, because a defect in the fuel pump will cause the check engine light to illuminate, and because a defect in the fuel pump will increase the Class Vehicles' regulated emissions.

39.     On information and belief, Nissan's failure to include the fuel pump as a covered part under the California emissions warranty, and Nissan's failure to identify the fuel pump as a high-priced part, was an intentional omission by Nissan designed to limit Nissan's warranty exposure and is just one example of Nissan's scheme to fail to properly and comprehensively identify all of the parts that should be identified as warranted parts covered for 3-years or 50,000-miles under the California emission warranty, and as high-priced warranted parts and covered for 7-years or 70,000 miles under the California emissions warranty.

40.     Nissan's application of the CCR to the fuel pump is incorrect.  The details of how Nissan actually applied the CCR formula with respect to the fuel pump are exclusively within Nissan's possession.  Similarly, the information regarding what other parts satisfied the

CCR requirements but were not identified by Nissan as emissions warranty parts and high-priced emissions warranty parts also is in the exclusive possession of Nissan.

41.     When Nissan vehicles are presented to Nissan dealerships for repairs of defects which should be covered under the 3-year 50,000 emissions warranty or the 7-year 70,000-mile California emissions warranty, but are not identified by Nissan's warranty booklets as being covered, Nissan refuses to provide coverage under the emissions warranty. As explained herein, Harris presented the Harris Vehicle to a Nissan authorized repair facility for repairs prior to the end of the 7-year 70,000-mile California emissions warranty period for high-priced emissions parts. Harris was wrongfully denied warranty coverage for the fuel pump, which should have been covered under the 7-year 70,000-mile California emissions warranty.

42.     The reason that Plaintiff was charged for said repairs was not the result of an individual issue relating to the Puente Hills dealership, or an oversight by Puente Hills in failing to identify the repairs as repairs that should have been covered under the 7-year 70,000-mile California emissions warranty. Rather, Plaintiff was charged for said repairs because of Nissan's uniform and systematic business practice of intentionally refusing to identify in the Nissan warranty booklet, and in resources provided to its dealerships, all of the parts that should be identified as high-priced warranted parts under California law in order to limit the amount of warranty claims paid by Nissan.

43.     CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires Nissan to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

44.     Nissan intentionally failed to identify all said components in order to reduce the amount of money that Nissan spends on warranty-related repairs.  If Nissan complied with California law and properly identified all parts as high-priced warranted parts that should be identified as such, then Nissan dealerships would properly provide warranty coverage for said high-priced warranted parts.

45.     Nissan's conduct violates California's unfair business practices statute, California Business and Professions Code section 17200, *et seq.* (the "UCL"), and violates the Consumers Legal Remedies Act, Civil Code section 1750, *et seq.*

46.     Plaintiff and other members of the Class have suffered damage as a result of Nissan's wrongful conduct.

47.     On February 13, 2020, pursuant to California Civil Code Section 1782, counsel for Plaintiff sent Nissan a letter, notifying Nissan in writing of Plaintiff's claims under the Consumers Legal Remedies Act relating to said Nissan warranty concealment. Said letter provided Nissan with an opportunity to take actions to remedy said unlawful practices. Specifically, the letter indicated that Nissan wrongfully failed to identify the fuel pump relating to the Harris Vehicle being a high-priced emissions part, having a 7-year 70,000-mile California emissions warranty, and failed to provide said coverage.

48.     On March 24, 2020, Nissan's counsel sent a letter in response, indicating, "Mr. Harris' claim that the fuel pump is an emissions-related part is incorrect."

**THE FUEL PUMP IN CLASS VEHICLES IS A HIGH-PRICED WARRANTED PART**

49.     All 2011-2017 Nissan Juke vehicles when sold new came with fuel pumps, part number 17040-1KM0B. The fuel pumps are emissions related parts. This is because when the fuel pumps fail, they cause the check engine light to illuminate, the failure will cause a vehicle to fail a smog check, and the failure will cause an increase in emissions regulated by the State of California, such as $CO_2$ and other Greenhouse gases. Furthermore, the cost of parts and labor to diagnose and repair a defective fuel pump exceeds the high cost limit. Thus, the fuel pump in Class Vehicles should have been classified by Nissan as a high-priced warranty part entitled to extended warranty coverage for 7-years 70,000-miles under the California High-Cost Emissions-Related Parts Warranty.

50.     On June 8, 2010, CARB published Manufacturer's Advisory Correspondence 2010-1. The MAC concluded that the high-priced cost limit was $540.00 for applicable model year 2011 vehicles. Had Nissan conducted a proper analysis relating to the cost of parts and service to diagnose and replace the 2011 Nissan Juke's fuel pump, Nissan would have

concluded that the cost exceeded $540.00. Thus, the 2011 Nissan Juke's fuel pump should have been designated as a high-priced warranted part, covered under the 7-year 70,000-mile warranty.

51.   On September 2, 2011, CARB published Manufacturer's Advisory Correspondence 2011-3. The MAC concluded that the high-priced cost limit was $550.00 for applicable model year 2012 vehicles. Had Nissan conducted a proper analysis relating to the cost of parts and service to diagnose and replace the 2012 Nissan Juke's fuel pump, Nissan would have concluded that the cost exceeded $550.00. Thus, the 2012 Nissan Juke's fuel pump should have been designated as a high-priced warranted part, covered under the 7-year 70,000-mile warranty.

52.   On March 7, 2012, CARB published Manufacturer's Advisory Correspondence 2012-1. The MAC concluded that the high-priced cost limit was $570.00 for applicable model year 2013 vehicles. Had Nissan conducted a proper analysis relating to the cost of parts and service to diagnose and replace the 2013 Nissan Juke's fuel pump, Nissan would have concluded that the cost exceeded $570.00. Thus, the 2013 Nissan Juke's fuel pump should have been designated as a high-priced warranted part, covered under the 7-year 70,000-mile warranty.

53.   On March 15, 2013, CARB published Manufacturer's Advisory Correspondence 2013-1. The MAC concluded that the high-priced cost limit was $580.00 for applicable model year 2014 vehicles. Had Nissan conducted a proper analysis relating to the cost of parts and service to diagnose and replace the 2014 Nissan Juke's fuel pump, Nissan would have concluded that the cost exceeded $580.00. Thus, the 2014 Nissan Juke's fuel pump should have been designated as a high-priced warranted part, covered under the 7-year 70,000-mile warranty.

54.   On July 10, 2014, CARB published Manufacturer's Advisory Correspondence 2014-1. The MAC concluded that the high-priced cost limit was $590.00 for applicable model year 2015 vehicles. Had Nissan conducted a proper analysis relating to the cost of parts and service to diagnose and replace the 2015 Nissan Juke's fuel pump, Nissan would have

concluded that the cost exceeded $590.00. Thus, the 2015 Nissan Juke's fuel pump should have been designated as a high-priced warranted part, covered under the 7-year 70,000-mile warranty.

55.     On March 30, 2015, CARB published Manufacturer's Advisory Correspondence 2015-1. The MAC concluded that the high-priced cost limit was $600.00 for applicable model year 2016 vehicles. Had Nissan conducted a proper analysis relating to the cost of parts and service to diagnose and replace the 2016 Nissan Juke's fuel pump, Nissan would have concluded that the cost exceeded $600.00. Thus, the 2016 Nissan Juke's fuel pump should have been designated as a high-priced warranted part, covered under the 7-year 70,000-mile warranty.

56.     On March 17, 2016, CARB published Manufacturer's Advisory Correspondence 2016-1. The MAC concluded that the high-priced cost limit was $600.00 for applicable model year 2017 vehicles. Had Nissan conducted a proper analysis relating to the cost of parts and service to diagnose and replace the 2017 Nissan Juke's fuel pump, Nissan would have concluded that the cost exceeded $600.00. Thus, the 2017 Nissan Juke's fuel pump should have been designated as a high-priced warranted part, covered under the 7-year 70,000-mile warranty.

57.     While Nissan may contend that the manufacturer's stated time or the "book time" to repair the fuel pump, combined with cost to Nissan for the part, is less than the high-priced thresholds established for 2011 through 2017, the book time does not reference the cost that consumers pay. The book time is no more than a guide for what Nissan has agreed to pay manufacturers for repairs performed under warranty, and most importantly, is not what retail consumers such as Harris actually are charged. The repair records relating to Harris' repair indicated that the cost for parts and service to diagnose and repair the fuel pump was actually $834.37, plus tax.

58.     With respect to the actual cost that Nissan paid for the parts, that information is in the exclusive control of Nissan.  However, the actual cost of the parts and labor for completing the fuel pump repair to Plaintiff's vehicle in 2018 was $834.37, excluding tax, based

on the repair records. Accordingly, based on that amount, Plaintiff calculates that the cost of the parts and service to diagnose and repair the fuel pump in 2011 should have been no less than $600.00, calculated as follows: The United States Bureau of Labor and Statistics uses a Consumer Price Index Calculator to estimate how much a product will increase in price based upon inflation. The calculator can be found at, "https://data.bls.gov/cgi-bin/cpicalc.pl." Using the repair date of August 2018 as the starting date, asking what the price of the good would have been in January 2010, and using the 2018 pretax cost of the parts and service of 834.37, the January 2010 cost that Nissan would have used as a projection to determine the 2011 cost would have been $717.03.  Unless Nissan has engaged in price gouging relating to its parts, the parts component of parts and service amounts certainly should have been no less than $600.00 in 2011, and only would have gone up thereafter. Thus, for model year 2011 through 2017 Nissan Juke vehicles, the fuel pump should have been designated as a high-priced emissions related part, and should have been covered for 7-years 70,000-miles under the California High-Cost Emissions-Related Parts Warranty.

59.     By failing to provide a 3-year 50,000-mile California emissions warranty and by failing to provide a 7-year 70,000-mile California emissions warranty for high-priced parts, relating to the fuel pump, Nissan violated the UCL and CLRA.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

61.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of himself and members of the Class as defined below.

62.     Excluded from the Class are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

63.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

64.     Plaintiff's proposed class consists of and is defined as follows:

All persons in California who, within the last four years, have been

owners or lessees of Nissan MY 2011 through MY 2017 Juke vehicles and who have paid for repairs and parts for the fuel pump that should have been covered under Nissan's "high-priced warranted parts" 7-year 70,000-mile California emissions warranty (the "Class").

65.     Plaintiff reserves the right, based on further investigation and discovery, to redefine or expand the Class and/or to add subclasses to include other high-priced warranted parts.  Further, per the terms of the warranty book, the "California Emission System Warranties apply to vehicles registered in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington." Therefore, Plaintiff reserves the right to expand the Class and/or to add classes to include the same parts on vehicles registered in states other than California.

66.     As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members.  Among the common questions of law and fact include:

(a)     Whether Nissan has failed, and is failing, to comply with the California emissions warranty by failing to provide a 3-year 50,000-mile California emissions warranty coverage for the fuel pump and/or all parts that are defined as high-priced warranted parts pursuant to the CCR.

(b)     Whether Nissan has failed, and is failing, to comply with the California High-Cost Emissions-Related Parts Warranty by failing to provide a 7-year 70,000-mile California emissions warranty for the fuel pump and/or all parts that are defined as high-priced warranted parts pursuant to the CCR.

(c)     Whether Nissan has failed, and is failing, to identify for consumers and dealerships the fuel pump and/or all of the parts that should be identified as California emissions warranty parts, and thus covered by the 3-year 50,000-mile California emissions warranty.

(d)     Whether Nissan has failed, and is failing, to identify for consumers and dealerships the fuel pump and/or all of the parts that should be identified as high-

1   priced warranted parts, and thus covered by the 7-year 70,000-mile California

2   High-Cost Emissions-Related Parts Warranty.

3   (e)   Whether Nissan's conduct of failing to identify the fuel pump and/or all of the

4         parts that should be identified as California emissions warranty parts and thus

5         covered by the 3-year 50,000-mile California Emissions-Related Parts Warranty

6         results in consumers suffering financial loss.

7   (f)   Whether Nissan's conduct of failing to identify the fuel pump and/or all of the

8         parts that should be identified as high-priced warranted parts and thus covered by

9         the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty

10        results in consumers suffering financial loss.

11  (g)   Whether Nissan has engaged in, and is engaging in, unlawful and unfair business

12        practices in violation of California Business & Professions Code section 17200,

13        *et seq.* with regard to Nissan's failure to identify the fuel pump and/or all of the

14        other warranted parts that should be covered by the 3-year 50,000-mile

15        California Emissions-Related Parts Warranty.

16  (h)   Whether Nissan has engaged in, and is engaging in, unlawful and unfair business

17        practices in violation of California Business & Professions Code section 17200,

18        *et seq.* with regard to Nissan's failure to identify the fuel pump and/or all of the

19        high-priced warranted parts that should be covered by the 7-year 70,000-mile

20        California High-Cost Emissions-Related Parts Warranty.

21  (i)   Whether Plaintiff and Class members are entitled to injunctive relief regarding

22        Nissan's failure to identify the fuel pump and/or all of the warranted parts that

23        should be covered by the 3-year 50,000-mile California Emissions-Related Parts

24        Warranty.

25  (j)   Whether Plaintiff and Class members are entitled to injunctive relief regarding

26        Nissan's failure to identify the fuel pump and/or all of the high-priced warranted

27        parts that should be covered by the 7-year 70,000-mile California High-Cost

28        Emissions-Related Parts Warranty.

(k)   Whether Nissan has engaged in, and is engaging, in concealment relating to Nissan's failure to identify the fuel pump and/or all of the warranted parts that should be covered by the 3-year 50,000-mile California Emissions-Related Parts Warranty.

(l)   Whether Nissan has engaged in, and is engaging, in concealment relating to Nissan's failure to identify the fuel pump and/or all of the high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(m)   Whether Nissan has violated and is violating the Consumers Legal Remedies Act, Civil Code section 1750, *et seq.*, with regard to Nissan's failure to identify the fuel pump and/or all of the warranted parts which should be covered by the 3-year 50,000-mile California Emissions-Related Parts Warranty.

(n)   Whether Nissan has violated and is violating the Consumers Legal Remedies Act, Civil Code section 1750, *et seq.*, with regard to Nissan's failure to identify the fuel pump and/or all of the high-priced warranted parts which should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(o)   The appropriate amount of restitution, or monetary penalties resulting from Nissan's violations of California law.

67.   <u>Numerosity</u>:  As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court.   The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

68.   <u>Typicality</u>:  As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of all Class members since Plaintiff and all members of the Class suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

69.     Adequacy:  As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests adverse or antagonistic to those of the Class and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Class to its conclusion

70.     Superiority:  As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods.  A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

71.     Defendant keeps extensive computerized records of its customers.  Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

72.     Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

73.     Nissan has actively engaged in misleading, and dishonest conduct relating to its failure to properly identify the fuel pump as an emissions related parts covered under the 3-year 50,000-mile warranty and as a high-priced warranted part covered under the 7-year 70,000-mile California emissions warranty.  Despite acting diligently, Plaintiff and the Class cannot be reasonably expected on their own to learn or discover what parts and repairs should be identified as high-priced and covered said California emissions warranties. Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and members of the Class, and the statute of limitations for bringing the claims set forth herein should be tolled.

74.     Nissan has actual and constructive knowledge that it is violating California law by failing to identify the fuel pump as a California emissions part covered by the 3-year 50,000-mile warranty and as a high-priced warranted part, covered by the 7-year 70,000-mile California emissions warranty. Nissan has concealed from Plaintiff and members of the Class that Nissan is violating California law as set forth herein.

75.     Any applicable statute of limitation is tolled by Nissan's knowledge, active concealment, and wrongful conduct set forth herein.  Nissan is further estopped from relying on any statute of limitation defense because of its concealment set forth herein.

**FIRST CLAIM FOR RELIEF**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

76.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

77.     California Business and Professions Code section 17200, *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  Nissan has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

78.     The UCL imposes strict liability.  Plaintiff need not prove that Nissan intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

79.     Nissan is a "person" as defined by Business & Professions Code § 17201.

80.     As a direct and proximate result of Nissan's acts and practices in violation of the UCL, Plaintiff and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

**Unlawful Prong**

81.     A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct.

82.     The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

83.     Nissan failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 3-year 50,000-mile warranty coverage, and 7-year 70,000-mile warranty coverage for the fuel pump installed in Class Vehicles. The California Emissions Warranty applies to all Class Vehicles.  13 CCR 2037(a). Pursuant thereto, manufacturers must warrant for 3 years or 50,000 miles that vehicles conform with the California Air Resources Board regulations, and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate. 13 CCR 2037(b)(1)-(2). The vehicle manufacturer is Nissan, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The fuel pump is a warranted part. The warranty period shall be 7 years or 70,000 miles for high-priced warranted parts. 13 CCR 2037(b)(3).  High-priced parts warranted parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). CARB published memos which calculated the cost limit for model years 2011 through 2017. Although the fuel pump exceeded the cost limit for model years 2011-2017, Nissan has failed to provide 7-year 70,000-mile warranty coverage for the fuel pump for model years 2011 and 2017.  The failure has resulted in damage to Plaintiff and members of the Class. Furthermore, Nissan has failed to even designate the fuel pump as an emissions part, thus Nissan has failed to provide even 3-year 50,000-mile coverage for the fuel pump.

84.     Moreover, while Plaintiff does not yet know the specific information that Nissan did or did not provide to CARB with respect to the fuel pump for Class Vehicles, on information and belief, Nissan did not designate the part as an emissions related part, and did not designate the fuel pump as a high-priced warranted part that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.  Thereby, Nissan was able to avoid identifying the fuel pump as an emission related part and as a high-priced warranted part in the warranty books for the Class vehicles, which purports to identify all parts covered under the 3-year 50,000-mile California emissions warranty and the 7-year 70,000-mile high-

priced California emissions warranty. Thus, Nissan's violation of the CCR directly affected communications with consumers.  By violating the CCR, Nissan was able to avoid disclosing in the warranty books that the fuel pump is a high-priced warranted part.

85.     Nissan's conduct also violates the unlawful prong of the UCL in that Nissan has violated the CLRA as further alleged below.

86.     Nissan's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.   Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## Unfair Prong

87.     Nissan's conduct violates the unfair prong of the UCL.

88.     An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided.  An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.  Nissan's conduct violates all of these definitions.

89.     As alleged above, Nissan engages and has engaged in a systematic business practice of intentionally failing to identify in its warranty booklet at the time of distribution, and in resources provided to its dealerships, numerous parts that Nissan is obligated to identify as warranted parts and high-priced warranted parts by operation of law, including specifically the fuel pump in Class Vehicles.  Nissan does this in an effort to reduce the amount of money that Nissan spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct.  If Nissan complied with California law and properly identified the fuel pump and all other California emissions related parts and parts as warranted parts and high-priced warranted parts that should be identified as

1   such, then Nissan dealerships would properly provide warranty coverage for said emissions

2   related parts and high-priced warranted parts.

3         90.    Further, Nissan's conduct is unfair because it intentionally refuses to provide

4   warranty coverage for the fuel pump for the sole purpose of wrongfully limiting its warranty

5   claims, with no regard for the fact that the public is being forced to pay for repairs which should

6   be covered under the California emissions warranty. Plaintiff and members of the Class have

7   suffered injury in fact and lost money or property as a result of Nissan's unfair business acts and

8   practices as set forth in detail.

9         91.    Nissan's failure to properly identify the fuel pump and/or all parts as warranted

10   emissions parts and high-priced warranted parts that should be identified as such, is a uniform,

11   systematic, and intentional business practice on the part of Nissan to minimize the amount of

12   money that Nissan has to pay out in warranty claims. This conduct violates California law.

13         92.    As a direct and proximate result of Nissan's acts and practices in violation of the

14   UCL, Plaintiff and members of the Class have paid out of pocket to repair or replace the fuel

15   pump and/or other parts that should have been covered under either the 3-year 50,000-mile

16   emissions warranty or the 7-year 70,000-mile California emissions warranty.  Forcing

17   consumers to pay out of pocket to repair or replace vehicle components that should be covered

18   under warranty is clearly unfair.

19         93.    Nissan's conduct does not benefit consumers or competition. Plaintiff and

20   members of the Class could not reasonably avoid the injury each of them suffered or will suffer,

21   which injury is substantial.  Nissan's conduct only benefits Nissan, by Nissan wrongfully

22   avoiding having to pay warranty claims which should be covered by the California emissions

23   warranty.

24         94.    The gravity of the consequences of Nissan's conduct as described above

25   outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

26         95.    Nissan's conduct also offends established public policy that is tethered to

27   legislatively declared policies as set forth in the laws detailed above, including California laws

28

1     and regulations regarding California's Emission Control System Warranty Requirements, or is

2     substantially injurious to the public, for the reasons set forth above.

3         96.      To the extent that any definition of "unfair" requires a balancing test or weighing

4     various factors, such an inquiry is fact intensive and requires a full factual record as to Nissan's

5     justification and motives for its conduct, and as to the impact of Nissan's conduct on Plaintiff

6     and Class members.

7         97.      Nissan's acts of unfair competition as set forth above present a continuing threat

8     and will persist and continue to do so unless and until this Court issues appropriate injunctive

9     relief.  Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

10                              **Deceptive Prong**

11         98.      Plaintiff's claim under this prong is predicated on omissions, not

12     misrepresentations.  While the warranty booklet for Class Vehicles claims to identify all of the

13     parts covered under the 3-year 50,000-mile California emissions warranty and the 7-year

14     70,000-mile California emissions warranty for high priced parts, the warranty book omits the

15     fuel pump as a part that that should have been listed as covered by both the California emissions

16     warranty and the California high-priced emissions warranty.

17         99.      Nissan engages in a uniform and systematic business practice of intentionally

18     failing to identify in the Nissan warranty booklet, and in resources provided to its dealerships,

19     the fuel pump as a covered California emissions part and a high-priced warranted part. Nissan

20     does this in an effort to intentionally conceal the identity of the parts which should be covered

21     under the 3-year 50,000-mile California emissions warranty and the 7-year 70,000-mile

22     California emissions warranty for high-priced emissions parts, and intentionally mislead

23     consumers with regard to what parts are covered under said warranties. This is done by Nissan

24     to reduce the amount of money that Nissan spends on warranty-related repairs. As warranted

25     parts necessary for the operation of the Class Vehicles, the parts that Nissan failed to properly

26     identify as warranted parts and high-priced relate to the central functionality of the Class

27     Vehicles and are critical to the their operation.  If Nissan complied with California law, and

28     properly identified all parts as warranted parts and high-priced warranted parts which should be

1   identified as such, then Nissan dealerships would properly provide warranty coverage for said

2   high-priced warranted parts.

3       100.   Nissan's failure to properly identify the fuel pump as a warranted part and a

4   high-priced warranted part is a systematic and intentional business practice on the part of Nissan

5   to minimize the amount of money that Nissan has to pay out in warranty claims. This conduct

6   violates California law.

7       101.   Said conduct is likely to deceive an ordinary consumer as Nissan concealed this

8   information from consumers and from Nissan's dealerships, in an effort by Nissan to minimize

9   the amount of money that Nissan has to pay out in warranty claims. One of the ways Nissan

10  misleads consumers relates to the information that Nissan provides to consumers in the warranty

11  booklet. Nissan intentionally omits information from the warranty booklet by intentionally

12  failing to classify all of the warranted emissions parts which should be covered by the 3-year

13  50,000-mile California emissions warranty and failing to classify all of the high-priced

14  warranted parts as parts that should be covered under the 7-year 70,000-mile California

15  emissions warranty.

16      102.   In evaluating the repair costs to be charged, Plaintiff justifiably relied on

17  Nissan's representation in the warranty booklet that it would comply with the California

18  emissions warranty and the California high-priced emissions warranty, and was deceived and

19  suffered damage as a result of Nissan's intentional and wrongful conduct.

20      103.   Nissan is fully aware of its obligations pursuant to the CCR and purports to

21  comply with them.  However, in derogation if its legal obligations, Nissan willfully and

22  intentionally conceals from consumers, and from the Nissan dealerships, the fuel pump as a part

23  that should be covered as a California emissions part and a high-priced warranted part pursuant

24  to the California emissions warranty, in order to reduce the amount of money that Nissan has to

25  pay in warranty claims.

26      104.   Nissan is and was under a duty to disclose to consumers and to its dealerships

27  that the fuel pump and/or other parts that are required to be covered under the 3-year 50,000-mile

28

1   California emissions warranty and the 7-year 70,000-mile California emissions warranty for

2   high-priced emissions parts.

3        105.   Nissan is and was further under a duty to disclose to consumers and to its

4   dealerships all of the parts which it is required to cover under the 3-year 50,000-mile California

5   emissions warranty and the 7-year 70,000-mile California emissions warranty because:

6      (1)   Nissan is and was in a superior position to know the true state of facts about the

7          duration of the California emissions warranties and which parts should be

8          covered as high-priced warranted parts;

9      (2)   Nissan has made partial disclosures about the extent of the California emissions

10          warranty;

11      (3)   Nissan has actively concealed and failed to identify all of the parts that are

12          covered under the California emissions warranties; and

13      (4)   Members of the Class, including Plaintiff, have suffered actual loss due to

14          Nissan's concealment and false representations.

15        106.   The facts concealed and not disclosed by Nissan to Plaintiff and members of the

16   Class are material.  Had Plaintiff and members of the Class known the true extent of the

17   California emissions warranty, and had Nissan been truthful to its dealerships and members of

18   the Class with regard to identifying all of the parts and repairs that are covered under the

19   California emissions warranty, as well as the extent of the California emissions warranty,

20   Plaintiff and members of the Class would have been able to avoid spending money in order to

21   repair Nissan vehicles sold and leased in California. As a result, Plaintiff and members of the

22   Class have suffered damage.

23        107.   In order to minimize the amount of money that Nissan spends on warranty

24   related repairs, Nissan continues to conceal that the fuel pump is a part covered under the

25   California emissions warranty for 3-years 50,000-miles, and that the part is a high-priced

26   warranted part that should be covered under the 7-year 70,000-mile California emissions

27   warranty.

28

108.     Furthermore, Nissan has refused to, and continues to refuse to provide 3-year 50,000-mile California emissions warranty coverage, and 7-year 70,000-mile California emissions warranty coverage relating to all repairs for the fuel pump which should be covered under said warranties pursuant to California law. This refusal is intentional, willful, unfair, and unlawful.

### SECOND CLAIM FOR RELIEF

### Violation of California Consumers Legal Remedies Act

### (Cal. Civil Code §§ 1750, *et seq.*)

109.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

110.     Nissan has violated Section 1770 of the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq.* (the "CLRA"). The violation results from Nissan's failure to keep its promise to the State of California, and members of the Class, including Plaintiff, that it would honor the terms of the Nissan warranty, and by doing so, that it would honor the terms of the CCR.  Furthermore, the warranty booklet  provided by Nissan to consumers, including Plaintiff, specifically references the California emissions warranty, and both inferentially and specifically represents that it will honor the terms of the CCR, however Nissan has refused, and continues to refuse to honor the terms of the CCR, as stated herein.

111.     Plaintiff is a consumer who was wrongfully required to pay for repairs which should have been paid for by Nissan pursuant to the CCR. The Harris Vehicle was presented by Plaintiff for repairs at a Nissan authorized repair facility, in compliance with the terms and conditions of the Nissan warranty. The Harris Vehicle required repairs which should have been covered pursuant to the CCR, based upon the Harris Vehicle's mileage and age. Nissan wrongfully failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set forth herein. Thus, Plaintiff suffered damage.

112.     Nissan engages in a systemic pattern of denying warranty claims under the CCR relating to emission warranted and high-priced warranted parts. Nissan knows that it is violating the terms of the CCR, however Nissan intentionally violates the CCR in order to save money. Plaintiff and members of the Class have presented Nissan vehicles to Nissan authorized repair

1   facilities for repairs that should have been covered under the CCR, but coverage has been

2   wrongfully denied to them. Plaintiff and members of the Class are generally unaware of the

3   terms and scope of the CCR, thus Nissan is able to get away with said wrongful conduct. As a

4   result, Plaintiff and members of the Class have suffered damage. Plaintiff brings this claim on

5   behalf of himself and the Class.

6       113.   Nissan's conduct in warranting, advertising, leasing, selling and distributing

7   vehicles in the State of California, while at the same time knowingly and wrongfully failing to

8   honor the terms of the CCR, constitutes the following violations of Section 1770:

9       (a)   Nissan represents and has represented that the vehicles sold and leased in the

10       State of California have characteristics or benefits which they did not have (in

11       violation of Section 1770(a)(5));

12       (b)   Nissan has falsely represented that the vehicles sold and leased in the State of

13       California were of a particular standard, quality, or grade when they were of

14       another (in violation of Section 1770(a)(7)); and,

15       (c)   Nissan advertised the vehicles that have been sold and leased in the State of

16       California with the intent not to sell them as advertised (in violation of Section

17       1770(a)(9)).

18       114.   Civil Code section 1780(a) provides that any consumer who suffers damage as a

19   result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no

20   case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining

21   the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other

22   relief that the court deems proper.

23       115.   Civil Code section 1781 provides that Plaintiff may pursue this case as a class

24   action.

25       116.   Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

26       117.   Plaintiff is entitled to attorney fees pursuant to Civil Code section 1780(e).

27                            **PRAYER FOR RELIEF**

28       WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for

relief and judgment against Nissan as follows:

      1.     Plaintiff, on behalf of himself and members of the Class, requests that the Court enter judgment against Nissan as follows:

      (a)     An order certifying the proposed Class designating Plaintiff as named representative of the Class, and designating the Plaintiff's Counsel as Class Counsel;

      (b)     A declaration that Nissan is financially responsible for notifying all Class members about the wrongful conduct set forth herein;

      (c)     An order enjoining Nissan from further deceptive distribution, sales, and lease practices, and to reimburse both Plaintiff and the Class for the money wrongfully paid by Plaintiff and members of the Class relating to repairs which should have been covered by Nissan under either the 3-year 50,000-mile California emissions warranty or the 7-year 70,000-mile California emissions warranty for high-priced parts;

      (d)     An award to Plaintiff and members of the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

      (e)     An award to Plaintiff and members of the Class of any repair costs they are owed;

      (f)     A declaration that Nissan must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or make full restitution to Plaintiff and members of the Class;

      (g)     An award of attorneys' fees and costs, as allowed by law;

      (h)     An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

      (i)     An award of pre-judgment and post-judgment interest;

      (j)     Leave to amend the Complaint to conform to the evidence produced at trial; and

      (k)     Other relief as may be appropriate under the circumstances.

### **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial

by jury as to all claims so triable.

Dated: July 7, 2020                     Respectfully submitted,

                                       **POMERANTZ LLP**
                                       **THE LAW OFFICE OF ROBERT STARR**

By: _____
                              Jordan L. Lurie
                              Ari Y. Basser
                              Robert L. Starr

                              *Attorneys for Plaintiff*